## Hopkins *versus* Forsyth, and Forsyth *versus* Hopkins.

1. In an action by a joint owner of a chattel against the sheriff for a por-
tion of the balance of proceeds of sale of it, it being sold on an execution
against some only of the joint owners, the averment of the sheriff in his re-
turn to the execution, that he had paid over the balance of proceeds to one of
the owners and agent of the others, was not a legitimate part of the return,
and did not stop the plaintiff from showing the truth. The remedy was not
by action for a false return.

2. Though the captain of a boat has authority to sell all the shares of the
owners in the same, the *sheriff*, on an execution against some only of the
owners, the captain being one, can sell only *their* interests.

3. On an execution against some of the owners of a chattel, the sheriff can,
in addition, sell the interests of any others of the owners, who agree that their
shares be sold, and all such are entitled to claim out of the balance of the pro-
ceeds. Others of the owners, who were not defendants, and did not so agree,
still retain their interests, and cannot claim any part of the proceeds.

4. The shareholders or joint owners of a steamboat are not necessarily
*partners* in it. They are not so, where there is no other relation between
them than that which arises from joint ownership.

5. The captain of a steamboat has no lien for advances; and the sheriff has
no right to satisfy his claim out of the proceeds of sale.

6. If in an action trying, it be agreed that the court should decide the law
on the *undisputed* facts, yet, if evidence offered by defendant be erroneously
rejected, this court cannot say, had the disputed evidence been admitted, that
it would not have been disputed, or the whole case submitted to the jury.
Whether the court adjudicated on the excluded evidence or not, the judgment
must be reversed.

Error to the District Court of *Allegheny county*.

This was an action of assumpsit by Hopkins *v.* Forsyth as
sheriff, to recover the plaintiff's proportion of money, raised by a
sale by defendant, of the interest of plaintiff in the steamboat Cir-
cassian, and which remained after payment of the execution, on
which the sale was made.

Oliphant, Duncan, Hopkins, Cox, Gilbert, Troth, Reynolds,
and Miller were owners of the steamboat, as tenants in common,
having different interests in it. One Bennet recovered a judgment
against Oliphant, Duncan, and Hopkins, for $454.20 and costs.
The suit was against the eight owners, but only three were served.
The claim of Bennet was for wages, as captain of the boat. A *fi.
fa.* issued, and on this writ the defendant, as sheriff, levied on
the boat, and made sale for $8100. The surplus the sheriff paid
over to Oliphant, one of the owners. Hopkins claimed three tenth
parts of the surplus, and the suit was brought to recover it.

[Hopkins *v.* Forsyth, and Forsyth *v.* Hopkins.]

The sheriff stated in his return, levy made on steamboat Circassian, sale advertised and property sold to F. H. Oliphant for $8100, which was applied to debt and interest, costs on the writ, and paid F. H. Oliphant, one of the owners and agent, $7574.45.

On the part of the plaintiff, the sale was proved and other matters as to ownership, and proof was made of an order from plaintiff for his share presented to the defendant, which was refused.

Defendant's counsel asked the court to instruct the jury, that on the evidence, the plaintiff is not entitled to recover:

1. Because the plaintiff is a party to the suit given in evidence, and is concluded by the return that the balance has been paid over to the owner and agent.

2. The proper remedy is by action against the sheriff for a false return.

The court refused to do so, and defendant's counsel excepted.

On the part of the defendant it was proved, that when the owners built the Circassian, there was no particular contract as to how she was to be built, or to run. She was to run on the waters of the Ohio, Bennet to be captain. Oliphant purchased Bennet's share; he took the place of Bennet, and the control of the boat. There was an instrument of writing, giving Oliphant the control. It was as follows:—

"We, the undersigned, owners of the steamboat Circassian, agree to the following arrangement:—Said boat is now valued at $10,000 by said owners, and that F. H. Oliphant is to take Isaac Bennet's interest of one-sixth, and to have control of the boat in future; a new set of books to be opened, and the old books to be settled up by some one of the owners, hereafter to be named, giving obligations for the debts due to individuals, on the best terms that can be agreed on. It is therefore understood, that said F. H. Oliphant is not to transfer his position, as controlling said boat, to any person, without consent of said owners."

The agreement was under seal, and signed by *six* of the owners, including Hopkins; dated 16th August, 1846.

A witness testified that Bennet had full power and control of the boat before that time: he had full power to sell. This was not in writing.

Defendant's counsel asked whether, at the time of the making of the instrument given in evidence, there was any power of sale of the boat given by the owners to Oliphant. Objected to, as tending to vary and explain the instrument. The objection sustained, and exception by defendant.

It was offered to prove that *these* owners had a meeting, and agreed that this sale would be the best disposition that could be made of the boat, and acquiesced in the sale as such, understanding it to be a sale of the whole boat, and that the boat was actually delivered to the purchaser.

[Hopkins *v.* Forsyth, and Forsyth *v.* Hopkins.]

1. To prove that the sale was of all the interests in the boat.

2. And an acquiescence in such sale by all the parties concerned.

By the court.—The effect of the legal process cannot be altered by the act of third persons. The offer is overruled, and the defendant excepted.

Offer to show the value of the boat, for the purpose of showing that all the interests in the boat were intended to be sold by the sheriff's sale.

The offer is objected to as irrelevant, and as tending to alter the legal effect of the sheriff's return.

Offer overruled, and defendant excepted.

It was proved that the debt to Bennet, for which the boat was sold, was for wages as captain of the boat.—Exception to this by plaintiff.

The deposition of Cox was offered, to show that Oliphant, to whom the balance was, paid, was invested with an unlimited control and discretion in regard thereto; that he was authorized to pay the debts, and that he did pay, before and after the sale, on account of the plaintiff and other owners, to the whole amount of the purchase-money which came to his hands.—It was objected to, as consisting of evidence to add to and vary the written arrangement given in evidence, and of declarations made at the time of the arrangement, and of evidence to show the state of the accounts between the owners, as partners, and that such evidence is incompetent in this action.—Objection sustained, and defendant excepted.

Defendant's counsel submitted points.

No facts being disputed, the parties agreed that the court shall direct such verdict as they think proper, subject to correction afterwards, the law of the case being reserved.—By the court, LOWRIE, J.:—The plaintiff was owner of one-eighth of the boat, and he can have but one-eighth of the balance, with interest, &c. He directed that the verdict be corrected accordingly.—Both sides excepted.

On the part of Hopkins, it was assigned for error,—1. That the court erred in entering judgment for the plaintiff below. 2. General errors.

On the part of Forsyth, it was assigned,—1. The court erred in entering judgment for the plaintiff below. 2. In rejecting the testimony offered by the defendant below, which is referred to in the bills of exceptions. 3. General errors.

The case was argued by *Shaler* and *McConnell*, for Hopkins.— On his part, it was claimed that the only interests in the boat sold were those of the three owners, against whom the execution issued; that the surplus money belonged to those three alone, and that he seeks to recover on that basis.

*T. Williams*, for Forsyth.—It was claimed, on his part, that the

[Hopkins *v.* Forsyth, and Forsyth *v.* Hopkins.]

interest in the boat, of all the owners, was sold, and that the surplus money belonged to all; and that it was offered to prove an acquiescence of some of the owners in the sale, as a sale of the whole boat.  It was alleged, that the defendant's return on the execution, that he had paid over the money in question to Oliphant, one of the owners, and agent, was a defence to the action.  That the court held that the interests of all the owners were sold, and that judgment was entered on that basis.

The opinion of the court was delivered, September 11th, by
GIBSON, C. J.—It is proper to begin with the exceptions of the defendant below, against whom judgment was rendered.

The averment of the sheriff that he had paid over the money in contest, was not a response to the writ, or, consequently, a legitimate part of the return; and it did not estop the plaintiff from showing the truth.  Even had it actually been mispaid, the fact would not have been a defence.  For a similar reason, the remedy was not by action for a false return.

The next point to be noticed has been properly abandoned. Doubtless an action on a joint contract of sale, though the interests sold were several, must be brought by all the vendors; but the present action is founded on a contract implied from a consideration which is the ownership of the property sold; and if that be several, so must the contract be.  The nature of the title will be considered presently.

The evidence, that the boat's husband had power to sell it, was properly excluded; not, however, because it would have impinged on his written appointment—for it went to an independent fact— but because the fact was immaterial.  It would not follow that because he might have sold all the shares, the sheriff could do as much on an execution against him, separately or conjunctly, or sell more, by force of it, than his share as a part owner.  The sheriff would not have the same power, because his writ gave him power to sell no more than the property of those who were parties to the judgment; not to execute a power given to another.  But the evidence, that two who had not been served, agreed at the sale that the sheriff should sell the boat out and out, was erroneously rejected.  Every shareholder whose property went to swell the surplus money, and none else, was entitled to share in the distribution of it.  The shares of the parties to the judgment and. execution—the plaintiffs among the rest—were sold, and the former owners of them were entitled to come in.  Those who were not parties, but agreed that their shares should pass by the sheriff's sale, would be estopped from disputing the purchaser's title; and they also would be entitled to come in.  But the two who were not parties, either to the judgment or the agreement, have their shares yet, and are not entitled to come in.  The original writ issued

D

[Hopkins *v.* Forsyth, and Forsyth *v.* Hopkins.]

against the eight, of whom four were served, and the offer was to prove that two who were not served, agreed that the sheriff should sell, not the shares, but the boat as an entire thing, and consequently, that the shares of the two, who were not bound either by the judgment or the agreement, were not sold; and that the owners of them had no claim to the money in the sheriff's hands. The evidence was offered to reduce the plaintiff's right from a fourth to a sixth, and it ought to have been received.

But it has been pressed on us, in the face of a hornbook principle, that the shareholders were partners; that the sale on the judgment against four of them passed the interests of all; and that all, whether parties to the agreement of sale or not, are entitled. A vessel may undoubtedly be brought into stock where the owners of it are in trade; but not where there is no other relation between them than that which arises from joint ownership. What other was there here? It does not appear that the interests of these owners were connected in any thing else than the boat itself. No one would suppose that a joint owner of a wagon and team, might not sell his moiety before the debts were got in and the expenses paid, or that joint creditors would have a preference, in respect to it, over separate creditors. Carriers may doubtless become partners; but not merely by becoming joint owners of a chattel and using it for a common purpose. And the principle is peculiarly applicable to ships or other craft, the exceptions to it in respect to them being always founded in very special circumstances. This boat appears not to have been a regular packet, but to have done such jobs as her husband could procure; and a partnership is usually formed on some plan of action. It is not to be doubted that one of these owners could not have affected the rest by the admission of a fact to their prejudice. A purchaser from him would have held his share in common with them, free from a lien for advances, and having an equal voice in respect to the employment of the boat or the choice of a husband for it. We are told that the contrary was incidentally ruled in Burbridge *v.* Durvall— a case like the present, except that the point was neither made nor ruled, incidentally or directly. That all the owners had not been served in the action which was the foundation of the demand in that case, was neither known nor suspected by the counsel, the trial court, or the court here; and it is not the practice of a court of error to reverse on points that were not ruled below.

The deposition of Cox, produced to show that the plaintiff was in arrear to Oliphant, the purchaser, for advances to the boat, was properly ruled out. The action was not against Oliphant, but against the sheriff, who had no right to retain for a debt due even to himself. Irwin *v.* Workman, 3 *Watts* 357, and Chambers *v.* Miller, 7 *Watts* 63, are direct to the point. A ship's husband has no lien for advances—as least none such as a sheriff may satisfy.

[Hopkins *v.* Forsyth, and Forsyth *v.* Hopkins.]

He may compel part owners to contribute by action, but he has no other remedy.    They resemble partners so far, that each is liable for the whole; but there the resemblance ends, for, as was ruled in Jaggers *v.* Binnings, 1 *Stark.* 64, the concession of one of them binds himself alone, and each of them may transfer his share at his pleasure.    It is clear, therefore, that the sheriff could not involve the plaintiff in a settlement of the boat's accounts.

The exception in the plaintiff's writ of error, is, that he ought to have had judgment for a fourth, not merely for a sixth, of the surplus money; and on the undisputed facts arising from the evidence actually admitted, that conclusion would be inevitable—for the judgment, execution, and levy showed no more than that four shares were sold.    But the defendant's evidence, to show that six of the eight shares were parted with and paid for, had been erroneously excluded; but had the plaintiff been allowed a sixth part of the surplus which arose from the price of them, it might perhaps have admitted of a doubt whether the errors would not have compensated each other.    It is not our practice to reverse for such as do no mischief.    But as the agreement was that the court should decide the law on the undisputed facts, we cannot say that the fact proposed in the defendant's offer would not have been disputed had the evidence been admitted, or that the whole case might not then have been put before the jury.    Had the court adjudicated on the excluded evidence, as they have done without it, we would still have been bound to send the cause to another trial, in order that the jury might give the plaintiff a fourth or a sixth, or whatever his proportion of a share may be, as they should find the fact to be.

Judgment reversed and *venire de novo* awarded.